NO. 23-3968

# In The
# United States Court of Appeals
## For The Ninth Circuit

## DANIEL E. DAVIS; PETER CONTI;
## GRINGO HOLDINGS, LLC,

*Plaintiffs – Appellants*,

**v.**

## BLUE TONGUE FILMS;
## DENVER AND DELILAH PRODUCTIONS; A. J. DIX;
## NASH EDGERTON; EROS INTERNATIONAL MEDIA LTD.;
## TRISH HOFFMAN; BETH KONO; MATTHEW STONE;
## ANTHONY TAMBAKIS; CHARLIZE THERON;
## REBECCA YELDHAM,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES

————————

## BRIEF OF APPELLANTS

————————

**Spencer Dreier**
**SD VENTURE LAW PLLC**
**620 Fifth Avenue, Suite 200**
**New York, New York 10020**

*Counsel for Appellants*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

In accordance with Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Plaintiffs-Appellants state that Daniel E. Davis and Peter Conti are individuals, and Gringo Holdings, LLC is a limited liability with no parent company or subsidiary, and that no publicly held company owns 10% or more of its stock.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ 1

STATEMENT REGARDING ORAL ARGUMENT ........................................ 5

STATEMENT OF JURISDICTION ................................................................. 5

STATEMENT OF THE ISSUES PRESENTED ............................................. 5

STATEMENT OF THE CASE ......................................................................... 6

    A. The Allegations of the SAC .................................................................... 6

    B. The Procedural History ........................................................................... 8

    C. The Decision Below ................................................................................ 9

    D. The Rulings Presented for Review ....................................................... 10

SUMMARY OF THE ARGUMENT .............................................................. 10

STANDARD OF REVIEW ............................................................................ 11

ARGUMENT .................................................................................................. 12

    I. PLAINTIFFS HAVE ADEQUATELY ALLEGED A LIKELIHOOD OF CONFUSION ............ 12

        1. The Strength of Plaintiffs' Mark ..................................................... 16

        2. Proximity of the Goods .................................................................... 20

        3. Similarity of the Marks .................................................................... 24

        4. Evidence of Actual Confusion ......................................................... 35

        5. Marketing Channels ......................................................................... 37

        6. Type of Goods and Purchaser Care .................................................. 40

        7. The Defendants' Intent in Selecting the Mark ................................. 44

        8. Likelihood of Expansion ................................................................. 51

CONCLUSION ............................................................................................... 52

# TABLE OF AUTHORITIES

## CASES

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,*
    944 F.2d 1456 (9th Cir. 1991) ..................................................................... 14, 35

*American Intl. Group v. American Intl. Bank*,
    926 F.2d 829 (9th Cir. 1988) ........................................................................ 22

*AMF v. Sleekcraft Boats*,
    599 F. 2d 341 (9th Cir. 1979) ......................................... 10, 12, 20, 23, 37, 41, 51

*Anstalt v. Bacardi & Co.*,
    31 F.4th 1228 (9th Cir. 2022) ............................................................. 12, 16, 18 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 26

*Brookfield Comm., Inc. v. West Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ......................................... 14, 16, 20, 23, 28, 42, 45

*Charisma Brands v. AMDL Collections*,
    2019 WL 6331399 (C.D.Cal. Sept. 3, 2019) ................................................... 13

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
    251 F.3d 1252 (9th Cir. 2001) ........................................................................ 13

*Dreamworks Prod. Group v. SKG Studio*,
    142 F.3d 1127 (9th Cir. 1998) .................................................................... 22, 27

*E&J Gallo Winery v. Gallo  Cattle Co.*,
    967 F.2d 1280 (9th Cir. 1992) ........................................................................ 26

*E&J Gallo Winery v. Grenade Beverage, LLC*,
    670 Fed.Appx. 634 (9th Cir. Nov. 16, 2016) .................................................. 26

*Entrepreneur Media, Inc., v. Smith,*
    279 F.3d 1135 (9th Cir. 2002) .............................................................. 20, 30, 36

1

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
  314 F.2d 149 (9th Cir. 1963) ........................................................ 23, 49

*Fortune Dynamic v. Victoria's Secret*,
  618 F.3d 1025 (9th Cir. 2010) .......................... 12, 14, 17, 19, 20, 23, 27

Goto.com., *Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) .................................................. 14, 16

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  572 U.S. 559 (2014) ............................................................... 11

*HMH Pub. Co., Inc. v. Brincat*,
  504 F.2d 713 (9th Cir. 1974) ...................................................... 49

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
  599 U.S. 140 ........................................................................ 9

*Jada Toys, Inc., v. Mattel, Inc.*,
  518 F.3d 633 (9th Cir. 2008) ...................................................... 53

*JL Beverage Co. LLC v. Jim Beam Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) .................................... 12, 14, 16, 17, 44

*Kiedis v. Showtime Networks, Inc.*,
  2008 WL 11173143 (C.D.Cal. Feb. 19, 2008) .................................... 13

*La Quinta Worldwide LLC v. Q.R.T.M.S.A.*,
  762 F.3d 867 (9th Cir. 2014) .............................................. 16, 26, 27

*Mastro's Restaurants v. Dominick Group, LLC*,
  2012 WL 2091535 (D. Ariz. June 11, 2012) ..................................... 14

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.2d 894 (9th Cir. 2002) ....................................................... 8

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F. 3d 792 (9th Cir. 2003) ..................................................... 12

*Murray v. Cable Natl. Broadcasting Co.*,
  86 F.3d 858 (9th Cir. 1996) ....................................................... 11

_Network Automation, Inc. v. Advanced Sys. Concepts, Inc._,
    638 F.3d 1137 (9th Cir. 2011)................................................................ 14, 16, 17

_Official Airline Guides, Inc. v. Goss_,
    6 F.3d 1384 (9th Cir. 1993) ..................................................................... 14

_Perfumebay.com, Inc. v. Perfumebay.com, Inc. v. eBay, Inc._,
    506 F.3d 1165 (9th Cir. 2007) ................................................................. 40

_Playboy Enterprises v. Netscape Comm._,
    354 F.3d 1020 (9th Cir. 2004) .............................................. 20, 27, 30, 42, 44

_Pom Wonderful, LLC v. Hubbard_,
    775 F.3d 1118 (9th Cir. 2014)................................................................ 14, 38

_Quicksilver, Inc. v. Kymsta Corp._,
    466 F.3d 749 (9th Cir. 2006) ................................................................... 14

_Rearden LLC v. Rearden Commerce, Inc._,
    683 F.3d 1190 (9th Cir. 2012) ........................................ 12, 13, 20, 21, 30, 36

_Rogers v. Grimaldi_,
    875 F.2d 994 (2d Cir. 1989) ..................................................................... 8

_Surfvivor Media, Inc. v. Survivors Products_,
    406 F.3d 625 (9th Cir. 2005) ......................................................... 18, 19, 20, 52

_Wells Fargo & Co. v. ABD Ins_,
    758 F.3d 1069 ..................................................................................... 14

## **STATUTES**

Title 15 U.S.C. § 1051 .............................................................................. 5

Title 15 U.S.C. § 1125(a) ......................................................................... 5

Title 28 U.S.C. § 1291 ............................................................................. 5

Title 28 U.S.C. § 1338 ............................................................................. 5

Title 28 U.S.C. § 1367 ........................................................................5

**<u>FEDERAL RULES</u>**

Federal Rules of Appellate Procedure Rule 9................................................55

Federal Rules of Appellate Procedure Rule 32(a)(7)(C) ........................................55

Federal Rules of Civil Procedure Rule 12(b)(6)........................................................5

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument and believe it would be helpful in resolving the issue raised in this appeal.

## STATEMENT OF JURISDICTION

The district court had original jurisdiction pursuant to 28 U.S.C. § 1338, because Plaintiffs brought a Lanham Act claim under 15 U.S.C. §§ 1125(a) and 1051, *et seq*. The district court exercised supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

The district court granted Defendants' motion to dismiss the Second Amended Complaint (ER 32-43) in its entirety, with prejudice, by Order dated November 2, 2023. (ER 3-20). Plaintiffs timely filed a Notice of Appeal on December 4, 2023. (ER 55-56).

This appeal is from a final order that disposes of all claims. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED

Does the Second Amended Complaint ("SAC") adequately allege a likelihood of confusion in its Lanham Act claim and state law claim for purposes of Fed. R. Civ. P. 12(b)(6)?

## STATEMENT OF THE CASE

### A. The Allegations of the SAC

Plaintiffs-Appellants Daniel Davis ("Davis") and Peter Conti are co-authors of a book entitled "GRINGO" (the "Book"), and, along with Plaintiff-Appellant Gringo Holdings, LLC, they own all property interests related to the Book. (ER 33-34 ¶¶4-7). The Book is a first-hand account of Davis' 13 years as an American fugitive on the run and out of his element south of the border, after fleeing to Mexico to avoid a drug conviction for which he had been "set up" by a "friend" with whom he had sold marijuana. (ER 35 ¶18). The Book was published in November 2016 and quickly became an Amazon #1 Bestseller. (ER 35 ¶¶17,19).

Defendants-Respondents are the producers and a distributor of a film also entitled "GRINGO" (the "Film"), which was released as an "Amazon Original Movie" in March 2018. (ER 34-35 ¶¶8-16, 21). The Film is a fictionalized account of an American, who, like Davis, is on the run and out of his element in Mexico, after being set-up by his "friends" with whom he had distributed marijuana. (ER 35 ¶22).

Plaintiffs assert claims for trademark infringement under the Lanham Act (Count One) (ER 39-42 ¶¶ 36-47) and for unfair competition under § 17200 of the California Business and Professions Code (the "UCL") (Count Two) (ER 42 ¶¶ 48-50). Plaintiffs allege that, prior to release of the Film, they had acquired a valid,

protectable trademark in the "GRINGO" title (the "Mark") by its having acquired secondary meaning in the marketplace. (ER 39-40 ¶¶37-38). Plaintiffs allege that Defendants titled their Film "GRINGO" knowing that it was the title of Plaintiffs' Book and with the purposeful intention to deceive, mislead and cause confusion among consumers, and specifically among Amazon consumers of media entertainment, as to the content and source of the Film and its association with the Book and/or sponsorship by Davis, in order to exploit the popularity of the Book. (ER 6, 9 ¶¶27-29, 39). Plaintiffs allege that Defendants have used the Mark in the same way that Plaintiffs have used the Mark, not only by using it as the title of an expressive work but by using it with similar lettering in a similar font, to refer to a similarly situated protagonist, in a similarly themed story, with a similar Amazon endorsement, targeting, in particular, the same market of Amazon media consumers. (ER 5-7, 9-10 ¶¶24-26, 30, 41-42).

Based on the foregoing, Plaintiffs allege that Defendants have caused a likelihood of confusion and actual confusion among the public, within the film industry, and among Amazon consumers in particular as to the relationship between the Book and the Film and the source of the Film. (ER 6-7, 9-10 ¶¶ 30-32, 40-42). As a result, many have mistakenly assumed that the Film is an adaptation of the Book. (ER 7-8 ¶¶ 33-35). Plaintiffs allege that this confusion has caused Plaintiffs

to lose additional sales of the Book and the opportunity to sell the film rights to the Book. (ER 7-8, 10-11 ¶¶33, 35, 45, 47).

**B.  <u>The Procedural History</u>**

Plaintiffs commenced this action *pro se* in the United States District Court for the Central District of California, on March 5, 2021, and filed their First Amended Complaint, with counsel, on June 15, 2021.  Then, as now, Plaintiffs asserted a claim under the Lanham Act as well as a claim under the California UCL.  By Order dated January 3, 2022 (ER 44-54) (the "First Order"), the Honorable James V. Selna granted Defendants' motion to dismiss, with leave to further amend, finding that (i) Plaintiffs had adequately alleged a protectable trademark acquired by secondary meaning, but (ii) that Plaintiffs had failed to allege a Lanham Act claim that could satisfy the test for trademark infringement in the context of expressive works set forth by the Second Circuit in <u>Rogers v. Grimaldi</u>, 875 F.2d 994, 997-998 (2d Cir. 1989), as adopted by this Court in <u>Mattel, Inc. v. MCA Records, Inc.</u>, 296 F.2d 894, 900 (9th Cir. 2002), and subsequent cases.

Plaintiffs filed the SAC (ER 32-43) on January 24, 2022, elaborating on their allegations of Defendants' intentional deception and "same use" of Plaintiffs' trademarked title. By Order dated March 23, 2022 (the "Second Order") (ER 23-31), the district court granted Defendants' motion to dismiss, this time with prejudice, finding that Plaintiffs had failed to cure what the Court had determined were the

pleading deficiencies of the Lanham Act claim under the <u>Rogers</u> line of authorities, i.e., that "Plaintiffs have not alleged facts from which a reasonable jury could conclude that Defendants' use of Plaintiffs' mark is 'explicitly misleading' as to its source." (ER 30). The Court also dismissed Plaintiffs' state law claim under the UCL, finding it "substantially congruent" with the Lanham Act claim and thereby insufficient for the same reasons. (ER 30-31).

Plaintiffs filed their Notice of Appeal from the Second Order on April 22, 2022, and, by Order dated June 9, 2023, this Court (at ER 21-22) vacated the Second Order and remanded the case to the district court "for further proceedings consistent with the Supreme Court's opinion" in <u>Jack Daniel's Properties, Inc. v. VIP Products LLC,</u> 599 U.S. 140 (June 8, 2023), which had been issued while the appeal was pending.

Upon remand to the district court, Defendants renewed their motion to dismiss the SAC, which the district court then granted, again with prejudice, by its Order dated November 2, 2023 (the "Order") (ER 3-20), which is the order now on appeal.

## C. **The Decision Below**

In its Order, the district court determined that Plaintiffs' trademarked title, as alleged, did serve as a "source identifier, as defined by <u>Jack Daniel's</u>, and that the sufficiency of Plaintiffs' Lanham Act claim in a Rule 12(b)(6) motion therefore must be assessed under the "likelihood-of-confusion" test rather than under the *Rogers*

test that the district court had previously applied. Nevertheless, in then applying the eight-factor test for likelihood of confusion established by this Court in <u>AMF v. Sleekcraft Boats</u>, 599 F. 2d 341, 348-49 (9th Cir. 1979), the district court held that Plaintiffs had not sufficiently alleged a likelihood of confusion to withstand dismissal. In doing so, the Court found (ER at 19):

> The overall balance of the factors weighs against the SAC's showing of a likelihood of confusion. Likelihood of expansion and evidence of actual confusion are not useful factors here. Commercial strength [of Plaintiffs' mark], proximity of goods and [Defendants'] intent in selecting the mark provide support for a likelihood of confusion, but not enough to outweigh those pointing against: conceptual strength [of Plaintiffs' mark], the similarity of the marks, marketing channels, type of goods and purchaser care. Accordingly, Plaintiffs do not state a claim for trademark infringement under the Lanham Act.

The Court then found that Plaintiffs had likewise failed to state a claim under the UCL and dismissed that claim as well, because, "under state law, the same Lanham Act likelihood-of-confusion analysis applies." (ER 20).

**D. <u>The Rulings Presented for Review</u>**

On appeal, Plaintiffs challenge the rulings of the district court dismissing each of Plaintiffs' claims for failure to adequately allege a likelihood of confusion.

## <u>SUMMARY OF THE ARGUMENT</u>

Plaintiffs have alleged more than enough to show a likelihood of confusion sufficient to state a claim under the Lanham Act and UCL — particularly with regard to the similarity of the marks, the commercial strength of Plaintiffs' Mark, the

proximity of the parties' products, the convergence of marketing channels used by the parties for the expressive works bearing the marks, and, most significantly, Defendants' actual intent to deceive consumers by using Plaintiffs' trademarked Book title as the title of their Film. Determining whether there is a likelihood of confusion is meant to be a factual determination, not to be resolved against a Lanham Act plaintiff on the face of the pleading, as a matter of law, except in the highly unusual case where there are no plausible allegations weighing in favor of a likelihood of confusion. Clearly, this is not such a case.

## STANDARD OF REVIEW

This Court reviews a Rule 12(b)(6) dismissal *de novo*. See Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559, 563 (2014). This standard of review applies, in particular, to appeals from Rule 12(b)(6) dismissals of Lanham Act claims for failure to adequately allege a likelihood of confusion. See Murray v. Cable Natl. Broadcasting Co., 86 F.3d 858, 860 (9th Cir. 1996) ("In trademark confusion cases, the clearly erroneous standard applies when the district court has made a factual and legal determination of likelihood of confusion based on submitted evidence or stipulated facts. *De novo* review is appropriate when the district court has found as a matter of law that the plaintiff's complaint fails to state a claim upon which relief can be granted.").

11

**ARGUMENT**

**PLAINTIFFS HAVE ADEQUATELY
ALLEGED A LIKELIHOOD OF CONFUSION**

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012). In this Circuit, in order to determine whether a likelihood of consumer confusion exists for purposes of a Lanham Act claim, the courts rely primarily on the eight-factor *Sleekcraft* test, which takes into account (1) the strength of the plaintiff's mark; (2) the proximity or relatedness of the parties' goods; (3) the similarity of the parties' marks; (4) evidence of actual confusion; (5) the marketing channels used by the parties; (6) the type of goods involved and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir.1979), abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F. 3d 792, 810 (9th Cir. 2003); See also JL Beverage Co. LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1106 (9th Cir. 2016); Anstalt v. Bacardi & Co., 31 F.4th 1228, 1252 (9th Cir. 2022).

This Court has made clear that likelihood of confusion under the Sleekcraft factors is meant to be a factual determination. See Fortune Dynamic v. Victoria's

Secret, 618 F.3d 1025, 1039 (9th Cir. 2010) ("[L]ikelihood of confusion is a factual

determination."); Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1264-65

(9th Cir. 2001) ("Likelihood of confusion [is] a question of fact. … [T]he question

of likelihood of confusion is routinely submitted for jury determination as a question

of fact.").  In Sleekcraft itself, this Court applied the eight factors only upon a full

trial record, not to the complaint.

It has been well established that, because likelihood of confusion is meant to

be a factual determination, a Lanham Act claim should rarely be dismissed at the

pleading stage for failure to satisfy the Sleekcraft test. See J. Thomas McCarthy,

McCarthy on Trademarks and Unfair Competition, § 32:121.25 ("A dismissal on the

pleadings because a likelihood of confusion is impossible from the face of the

Complaint is highly unusual…"); Rearden, supra at 1210 (9th Cir. 2012) ("careful

assessment of the pertinent factors that go into determining likelihood of confusion

usually requires a full record"); see also Kiedis v. Showtime Networks, Inc., 2008

WL 11173143 at *5 (C.D.Cal. Feb. 19, 2008) (likelihood of confusion as to two

similar titles "is a factual issue not appropriate for resolution without examining the

evidence."); Charisma Brands v. AMDL Collections, 2019 WL 6331399 at *4-5

(C.D.Cal. Sept. 3, 2019) ("a plaintiff is not required to prove the likelihood of

confusion at the pleading stage … Rather, the likelihood of confusion is a fact-

specific inquiry best left for decision after discovery. … The Court need not, and

indeed cannot, determine at the pleading stage whether Plaintiff can make a sufficient evidentiary showing under the *Sleekcraft* factors."); <u>Mastro's Restaurants v. Dominick Group, LLC</u>, 2012 WL 2091535 at *6 (D. Ariz. June 11, 2012) (Even where marks arguably appear dissimilar, the court "does not weigh the evidence to assess the *Sleekcraft* factors. Instead, [defendant's] arguments must be deferred to the summary judgment stage of the litigation.").

Here, the Court below offered no explanation as to why this case should be the very unusual case where a Lanham Act claim is dismissed at the pleading stage for failure to adequately allege a likelihood of confusion. The Court failed to cite a single case where that occurred, without reversal.[1] And the Court did *not* find that

---

[1] In addressing the case law on likelihood of confusion, the district court cited to ten cases (other than <u>Sleekcraft</u> itself, which was decided upon a full trial record) as relevant authority for its determinations, but, remarkably, in not a single one of these cases did a court dismiss a Lanham Act claim on a Rule 12(b)(6) motion for failure to adequately allege a likelihood of confusion. See <u>JL Beverage</u>, <u>supra</u> at 1107 (9th Cir. 2016) (ER 12) (district court granted summary judgment in favor of Lanham Act defendant; reversed on appeal); <u>Goto.com., Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1207 (9th Cir. 2000) (ER 12) (district court granted preliminary injunction in favor of Lanham Act plaintiff based on finding a likelihood of confusion; affirmed on appeal); <u>Brookfield Comm., Inc. v. West Coast Ent. Corp.</u>, 174 F.3d 1036, 1055 (9th Cir. 1999) (ER 18) (district court denied Lanham Act plaintiff's motion for preliminary injunction for failure to adequately evidence a likelihood of confusion; reversed on appeal); <u>Network Automation, Inc. v. Advanced Sys. Concepts, Inc.</u>, 638 F.3d 1137, 1149 (9th Cir. 2011) (ER 12) (district court found evidence of likelihood of confusion sufficient for preliminary injunction; reversed on appeal); <u>Fortune Dynamic, Inc.</u>, <u>supra</u> at 1025 (9th Cir. 2020) (ER 12) (district court granted summary judgment denying trademark infringement; reversed on appeal); <u>Quicksilver, Inc. v. Kymsta Corp.</u>, 466 F.3d 749 (9th Cir. 2006) (ER 13) (district court granted Lanham Act plaintiff's motion for judgment as a matter of law after trial, without any

the SAC was so lacking in plausible allegations of likelihood of confusion that one might expect this to be that unusual case where a Rule12(b)(6) dismissal is warranted. To the contrary, as shown above, the Court acknowledged that various of the <u>Sleekcraft</u> factors, including several of the most important of those factors, weighed *in favor* of finding that Plaintiffs had adequately alleged a likelihood of confusion. Nevertheless, the Court granted the motion to dismiss, with prejudice, because it still somehow found from the face of the pleading that "the overall balance of the factors weighs against the SAC's showing a likelihood of confusion."

As shown below, even if that were so — i.e., even if the overall balance of the <u>Sleekcraft</u> factors, based on the allegations in the SAC, did weigh against a likelihood of confusion, while at least several of the factors (as Judge Selna found) still weighed in favor — dismissal at the pleading stage would still be premature and unsupportable. In any event, as also shown below, under the prevailing authorities in this Circuit, the overall balance of the <u>Sleekcraft</u> factors, as alleged in the SAC,

---

<u>Sleekcraft</u> analysis; reversed on appeal); <u>Pom Wonderful, LLC v. Hubbard</u>, 775 F.3d 1118 (9th Cir. 2014) (ER 15) (district court denied Lanham Act plaintiff's motion for preliminary injunction; reversed on appeal); <u>Wells Fargo & Co. v. ABD Ins, .& Fin. Servs., Inc.</u>, 758 F.3d 1069) (9th Cir. 2014) (ER 15) (district court denied Lanham Act plaintiff's motion for preliminary injunction; reversed on appeal); <u>Acad. of Motion Picture Arts & Sciences. v. Creative House Promotions, Inc.</u>, 944 F.2d 1446 (9th Cir. 1991) (ER 18, n.3) (district court found no trademark infringement after bench trial; reversed on appeal); <u>Official Airline Guides, Inc. v. Goss,</u> 6 F.3d 1384 (9th Cir. 1993) (ER 18-19, n. 3) (district court found not trademark infringement after trial).

decidedly does ***not*** weigh against a likelihood of confusion — they mostly indicate a likelihood of confusion. Therefore, dismissal of this action was not only premature but apparently without precedent. Plaintiffs' allegations of likelihood of confusion are more than enough, as a matter of law, to allow Plaintiffs to proceed to discovery and prove the likelihood of confusion.

### 1. The Strength of Plaintiffs' Mark

As this Court has stated: "The purpose of examining the strength of the plaintiff's mark is to determine the scope of trademark protection to which the mark is entitled." Anstalt, supra, 31 F.4th at 1258 (9th Cir. 2022). "The stronger a mark — meaning the more likely it is to be remembered and associated in the public mind with the mark's owner — the greater the protection it is accorded by trademark laws." Brookfield Comm., supra, 174 F.3d at 1058 (9th Cir. 1999); accord, e.g., Network Automation, supra, 638 F.3d at 1149 (9th Cir. 2011); La Quinta Worldwide LLC v. Q.R.T.M.S.A., 762 F.3d 867, 874 (9th Cir. 2014).

To determine the strength of a mark, courts in this Circuit examine both its "commercial strength" and its "conceptual strength." Goto.com., supra, 202 F.3d at 1207 (9th Cir. 2000). As the district court observed here (ER 12): "A mark's commercial strength depends on 'actual marketplace recognition.' JL Beverage, [supra], 828 F.3d at 1107." The Court had little trouble finding that the commercial strength of Plaintiffs' Mark "weighs in favor of likelihood of confusion." (ER 13).

Judge Selna found that the SAC adequately alleges the sort of marketplace recognition indicative of the commercial strength of a mark, because it "alleges public association with the Book due to advertising, Amazon marketing, book reviews, readership and appearance on bestseller lists." Id. (ER 13; ER 39-40 ¶¶ 37-38). The Court had previously concluded in its First Order (ER 49) that, by reason of this marketplace recognition, "Plaintiffs have sufficiently alleged secondary meaning." The Court found that, having achieved secondary meaning, the Mark had necessarily achieved the sort of recognition that establishes "commercial strength."

A mark's conceptual strength "depends largely on the obviousness of its connection to the good or service to which it refers." JL Beverage, supra at 1107. "The less obvious the connection, the stronger the mark, and vice versa." Fortune Dynamic, supra, at 1033. "Conceptual strength involves classification of a mark along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." National Automation, supra at 1149. Judge Selna acknowledged these five classifications (ER 12) but made no classification of Plaintiffs' Mark here. Instead, he simply determined, summarily, that "'Gringo' is not particularly distinctive on its own" and therefore that the Mark's "conceptual strength weighs against" likelihood of confusion. (ER 13). However, this ignores the fact that Plaintiffs are not alleging a protectable mark in the word "Gringo'" — "on its own" — they are alleging a protectable mark in the title of the

17

Book "GRINGO" (ER 40 ¶ 38), which, the Court had determined *was* "distinctive" in finding that the SAC had adequately alleged the Mark had achieved secondary meaning.

Plaintiff's Mark in the title "GRINGO" is neither a generic mark nor a descriptive mark. A "generic" mark is used "to refer generally to the product rather than a particular brand of the product;" an example being "Lite Beer." Brookfield Comm., supra, at 1058 n.19. The mark "GRINGO" does not simply refer to the fact that the product related to the mark is a book. A "descriptive" mark "directly describes the quality or features of the product;" an example being "Rich 'N Chips" chocolate chip cookies. Id. The mark "GRINGO" does not *describe* any quality or feature of the book. Instead, the mark "GRINGO" is a suggestive mark.

"A suggestive mark conveys an impression of a [product] but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature;" an example being "Roach Motel." Id. It may require the consumer to use some imagination "to understand the mark's significance … to make a mental leap from the mark to the product." Fortune Dynamic, supra, at 1033-1034; accord, Surfvivor Media, Inc. v. Survivors Products, 406 F.3d 625, 632 (9th Cir. 2005) ("'Suggestive' marks do not describe the product's features but suggest them. The exercise of some imagination is required to associate a suggestive mark with the product."); Anstalt, supra, 31 F. 4th, 1259-60 (Where "consumers must exercise

some imagination (but not much) to associate the mark with the nature or features of the product, the mark can fairly be deemed suggestive.").

Plaintiffs' mark in the "GRINGO" title is suggestive rather than generic or descriptive, because rather than merely referring to the nature of the product or describing a quality or feature of the product, it invites the consumer to exercise some imagination and speculate as how the term relates to the Book: For those consumers who may be familiar with the term — which, obviously, is a Spanish, not English, term — the Mark suggests that the Book may have something to do with a non-Spanish-speaking American, perhaps in Latin America — but in still some undefined context. This Court has "recognized that suggestive marks," unlike generic or descriptive marks, "are 'inherently distinctive' and are entitled to 'greater protection.'" Anstalt, supra at 1260; see also Fortune Dynamic, supra at 1034 ("[I]f the mark is suggestive, there is a stronger likelihood that a jury could reasonably conclude that the 'strength of the mark' favors the [plaintiff]."); Surfvivor, supra at 632 (a "suggestive mark weighs in favor" of a likelihood of confusion.).

Thus, there is no basis — at least at the pleading stage — to conclude that this Mark necessarily falls so low on the spectrum of classifications of conceptual strength that it must be deemed to be a weak mark, despite its acknowledged commercial strength. Indeed, this Court has observed, in JLBeverage, supra, at 1107, that "evidence of commercial strength can transform a suggestive mark into a

strong mark." Id.  In fact, even a descriptive mark that has achieved secondary meaning — which, again, Plaintiffs have adequately alleged here — may be considered a strong mark for purposes of Sleekcraft.  See, Playboy Enterprises v. Netscape Comm., 354 F.3d 1020, 1028 (9th Cir. 2004); La Quinta, supra, at 875.

In any event, this Court has determined that "which category [of conceptual strength] a mark belongs in is a question of fact" to be resolved by the fact-finder, not on a motion to dismiss.  Fortune Dynamic, supra, 618 F.3d at 1034.  Based on the foregoing, Plaintiffs should have the opportunity to proceed with discovery and establish a record that evidences the strength of their Mark.  See e.g., Entrepreneur Media, Inc., v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002) (Lanham Act plaintiff who does not initially demonstrate the strength of its mark should "have the opportunity to prove that its mark is stronger than it currently appears").

## 2. **Proximity of the Goods**

In regard to this Sleekcraft factor, this Court has stated: "Related goods (or services) are those which would be reasonably thought by the buying public to come from the same source if sold under the same mark."  Rearden, supra at 1212.  For this reason, "related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." Brookfield, supra at 1055. "The danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." Sleekcraft,

supra, 599 F.2d at 350. "[T]he more closely related goods are, the more likely consumers will be confused by similar marks." Entrepreneur Media, supra, at 1147.

"The proximity [or relatedness] of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." Network Automation, supra, at 1150. This does not mean that the products must be competitive; Lanham Act plaintiffs "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor [of Sleekcraft]." Rearden, supra at 1212. The related goods analysis is designed to protect a mark from infringement by a similar mark even on non-competitive goods, inasmuch as a buyer may still be likely to assume a common source or sponsorship. 2 J. McCarthy, supra, § 24:6 at 182.

Here, as the district court acknowledged, the allegations in the SAC satisfy the criteria for finding Plaintiffs' Book and Defendants' Film to be "related goods":

**First:** The SAC alleges the use of the "GRINGO" mark in two products that are "complementary" — books and films. Both are expressive works, and, as the district court observed here: "It is indeed common, if not the norm, for films to be adapted from books or other media and share the same title. It is reasonable for the public to encounter a film and suspect whether it derived from another work." (ER 14). Indeed, Judge Selna took judicial notice of estimations by the entertainment media that "adaptations account for up to 50 percent of all Hollywood films." (ER

21

14 n.2). The SAC alleges that in this case many consumers in fact do "believe the [Film] is an adaptation of the Book." (ER 38-39 ¶¶ 33, 35). Defendants released their Film 16 months after the publication of Plaintiffs' Book (ER 35 ¶¶ 17, 21) — while the popularity of the Book was still very fresh and more or less just when the public might expect a popular book to be adapted to a film.

Plaintiffs, therefore, have adequately alleged that the Book and the Film are "complementary" products. See e.g., Dreamworks Prod. Group v. SKG Studio, 142 F.3d 1127, 1131 (9th Cir. 1998) (finder of fact could find "complementary" products for purposes of Sleekcraft where plaintiff sold "sci-fi" merchandise at sci-fi conventions it sponsored, and defendant was well-known movie studio that made, *inter alia*, sci-fi movies, because such merchandise is often derived from such movies, and consumers could thus easily suspect the studio sponsored plaintiff's conventions); American Intl. Group v. American Intl. Bank, 926 F.2d 829, 832 (9th Cir. 1988) (plaintiff underwriter of insurance and defendant commercial bank, with even just "minor overlap of their respective services," were "sufficiently 'complementary' or 'related' that the public is likely to be confused as to the source of the services by reason of similar marks, even though the parties are not direct competitors;" plaintiff was "entitled to have all inferences of this sort resolved in its favor.").

In <u>Fleischmann Distilling Corp. v. Maier Brewing Co.</u>, 314 F.2d 149, 159-69 (9th Cir. 1963), this Court found that "beer and whiskey, both being within the alcoholic beverage industry, are … related" for purposes of assessing likelihood of confusion.  In the same way that beer and whiskey are both types of products in the alcoholic beverage industry, so are books and films both types of products in the entertainment media industry. They are related and thereby more vulnerable to consumer confusion as to a common source. <u>See also</u> <u>Brookfield Comm.</u>, <u>supra</u> at 1056 (where "both companies offer products and services relating to the entertainment industry generally … [the companies] are not properly characterized as non-competitors," and the products and services may be deemed related). "[C]omplementary products or services are particularly vulnerable to confusion." <u>Sleekcraft</u>, <u>supra</u> at 350; <u>Accord e.g.</u>, <u>Fortune Dynamic</u>, <u>supra</u> at 1035.

**<u>Second</u>:** The SAC alleges that the two products, i.e., Plaintiffs' Book and Defendants' Film, are sold to the same class of purchasers — "consumers of media entertainment" (ER 36-37 ¶¶ 26-27) and the "Amazon media entertainment consumer class in particular." (ER 38-41 ¶¶ 32, 37-38, 41-42).  This satisfies the second criterion for demonstrating relatedness.

**<u>Third</u>:** The two products are similar in use and function — both the Book and the Film are forms of popular media entertainment, and both are primarily

disseminated through the Amazon media platform. This satisfies the final criterion for demonstrating relatedness.

For these reasons, the district court found that: "While the relationship [here] is not as strong as it would be between two works of the same medium, films and books are still related to a degree that weighs, to a moderate extent, in favor of the likelihood of confusion." Plaintiffs submit that books and films, especially by reason of the frequent adaptation of one to the other, are related to a degree that weighs more than just to "a moderate extent" in favor of the likelihood of confusion. At minimum, the extent of this weight is a question of fact for a fact-finder to determine.

### 3. <u>Similarity of the Marks</u>

"[T]he similarity of the marks has always been considered a critical question in the likelihood-of-confusion analysis. … Obviously the greater the similarity between the two marks at issue, the greater the likelihood of confusion." <u>Goto.com</u>, <u>supra</u>, at 1205-06.

Plaintiffs allege that the title of Defendants' Film — "GRINGO" — is not just similar to but identical to Plaintiffs' trademarked Book title. (ER 33, 36-37 ¶¶ 4, 8, 23, 30). This is borne out by a comparison of the cover of the Book and the "cover" of the Film as depicted in the SAC. (ER 36 ¶ 25). Judge Selna, nevertheless, somehow found that this factor — the similarity of the marks — "weighs heavily against the likelihood of confusion." (ER 15). He cited three supposed reasons:

**First:** Judge Selna found that the titles of the Book and the Film actually "differ" (ER 13), because he determined, from the depiction of their covers in the SAC (ER 36 ¶ 25), that "the Book is titled, 'Gringo: My Life on the Edge as an International Fugitive,' whereas the Film is titled just 'Gringo.'" (ER 15). Plaintiffs submit that there is no basis for this finding, at least not at the pleading stage. The SAC alleges that the title of both the Book and the Film is "GRINGO," both set in all capital letters.

Moreover, despite the fact that Judge Selna found the title of the Book to be something longer — i.e., to include its subtitle[2] — the Plaintiffs allege that they have a protectable trademark only in the title "GRINGO" — nothing more, nothing different. (ER 39-40 ¶¶ 37-38). And Judge Selna found that Plaintiffs adequately alleged a protectable trademark in just that title by virtue of it having acquired secondary meaning. However, the Court then, without explanation, contradicted that finding in determining that, for purposes of <u>Sleekcraft</u>, the title of the Book was actually something else.

In doing so, the Court not only contradicted itself but improperly engaged in fact-finding on a Rule 12(b)(6) motion to dismiss to determine that the title was

---

[2] Webster's Dictionary defines a subtitle as a "secondary or explanatory title." It is a "subordinate title to a published work." Here the words that the Court incorporated into the title of the Book were clearly a subtitle — they appeared in much smaller type below the actual title "GRINGO" and elaborated on the subject of the Book.

actually not what Plaintiffs had alleged. On a motion to dismiss, the Court, of course, must accept all well-pleaded factual allegations as true. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). The SAC alleges that the title of the Book is "GRINGO," and certainly that is a plausible allegation, substantiated by *inter alia,* the depiction of the Book's cover in the SAC. Defendants, nevertheless, made the factual argument that the subtitle was part of the title, and the Court evidently and erroneously adopted that argument — despite the facts that (a) the Court recognized in this same Order that Plaintiffs had adequately alleged a protectable mark only in the title "GRINGO" (ER 11), and (b) the Court acknowledged elsewhere in the Order that the Book had a subtitle in addition to the title. (ER 15; <u>see</u> *infra* at 28).

In any event, even assuming *arguendo* and contrary to fact that the titles are not actually identical, because the Book includes a subtitle, clearly the same word "GRINGO" is the dominant word in each title, and that is enough to confer similarity. <u>See e.g.</u>, <u>La Quinta Worldwide</u>, <u>supra</u>, 762 F.3d at 876 (9th Cir. 2014) (finding "La Quinta" and "Quinta Real" were similar marks, because they shared the "dominant" word); <u>E&J Gallo Winery v. Gallo Cattle Co.</u>, 967 F.2d 1280, 1291-92 (9th Cir. 1992) (affirming the district court's finding that "Gallo" and "Joseph Gallo" were similar marks, because "Gallo" was the dominant element in both marks); <u>E&J Gallo Winery v. Grenade Beverage, LLC</u>, No. 14-16949, 670 Fed.Appx. 634 (9th Cir. Nov. 16, 2016) (affirming the district court's finding that the marks "Gallo" and

"El Gallo" were "similar" under <u>Sleekcraft</u>, because they share a dominant word); <u>Dreamworks Prod. Group</u>, <u>supra</u>, 142 F.3d at 1131 (9th Cir. 1998) (two names spelled slightly differently could still be similar marks under <u>Sleekcraft</u> — question of fact); <u>Playboy Enterprises v. Netscape Comm.</u>, 354 F.3d 1020, 1028 (9th Cir. 2004); <u>Brookfield Comm.</u>, <u>supra</u>, at 1055 (9th Cir. 1999) (defendant's allegedly infringing mark "moviebuff.com" found "essentially identical to [plaintiff's] mark "MovieBuff."). In <u>Sleekcraft</u> itself, of course, the marks "Sleekcraft" and "Slickcraft" were not identical but were found (at 352) to be sufficiently similar for purposes of likelihood of confusion.

Notably, the similarity of marks is to be assessed under <u>Sleekcraft</u> not just by their "appearance" but also by their "sound and meaning." <u>Sleekcraft</u>, <u>supra</u>, at 352; <u>accord e.g.</u>, <u>JL Beverage</u>, <u>supra</u>, at 1109; <u>La Quinta</u>, <u>supra</u>, at 875-76. Here, it is alleged that Defendants used as the title for their Film a mark that not only appeared to be similar to (or identical to) the trademarked title for Plaintiffs' Book, but that was also intended to suggest the same thing as was suggested by Plaintiffs' title — an English-speaking protagonist out of his element south of the border. (ER 40 ¶41). "Closeness in meaning can itself substantiate a claim of similarity." <u>Sleekcraft</u>, <u>supra</u>, at 352; <u>see also</u> <u>Fortune Dynamic</u>, <u>supra</u> at 1034; <u>La Quinta</u>, <u>supra</u> at 876.

Likewise, the two marks at issue here have the same "sound," i.e., they are pronounced the same. This also makes them more similar for purposes of <u>Sleekcraft</u>.

See e.g., <u>Dreamworks</u>, <u>supra</u>, at 1131; <u>Brookfield Comm.</u>, <u>supra</u> at 1055 (this Court considered it significant that the two marks were "pronounced the same way," even though one would have to add the words "dot.com" at the end of defendant's mark).

Accordingly, there is no basis to find, at least at the pleading stage, that the trademarked title of the Book is not the same as or similar to the title of the Film. It is alleged that the titles are the same — and, at the very least, they certainly both prominently bear the dominant term "GRINGO" — and that is sufficient to constitute similarity at this stage. If there is to be any different determination in this regard, it must be made by the fact-finder, not on a motion to dismiss.

**<u>Second:</u>** In determining that the marks here are dissimilar, the district court reached to make additional factual findings as to differences in the artwork that the parties used in connection with the marks. Based on the SAC's depiction of the cover of the Book and a poster for the Film, the Court found as follows (ER 15):

> The covers are far from identical. The artwork, font and style are strikingly different. According to the images in the SAC, the Book features a blue and black cover with the shadow of a person's legs and a superimposed 'wanted' notice. The Film's cover is bright yellow and prominently features the faces of three of the film's stars in the top two-thirds, with an action shot of the main character running from two-gun-wielding characters in the bottom third. A great deal of text adorns the Book cover, such as the title in all capital letters, subtitle, "Amazon #1 Best Seller," another "Amazon Best Seller" label in a ribbon image, "the True Story," and the authors' names. The Film cover includes just "Gringo" in all capital letters and "Amazon Original."

It is true that, in assessing the similarity factor, "the marks must be considered in their entirety and as they appear in the marketplace," JL Beverage, supra, at 1109, but again it bears emphasis that the entirety of Plaintiffs' trademark here is in a one-word title — "GRINGO" — not in any particular design or logo or artistic presentation of that title. Where the mark that is allegedly infringed is in or includes a design or logo or other artwork, the similarity of the artwork used by the defendant may naturally bear on the similarity of the marks (see e.g., id. at 1109-10), but where, as here, the mark is only in the title itself, the district court offered no authority or reasoning why the artwork used by Defendants on their Film poster in connection with that title should determine whether or not the title itself is similar to the trademarked title of Plaintiffs' Book — "GRINGO."

This Court's decision in Fortune Dynamic, supra, is on point. There, the plaintiff manufacturer of footwear under the trademark "DELICIOUS" brought a Lanham Act claim against the defendant clothing retailer for selling tank tops with the word "delicious" written across the front. This Court acknowledged that, even though the marks were "the same word," they had "markedly different appearances" — the plaintiff's mark "DELICIOUS" "is written in black, block letters on the inside heel of the shoe and on the shoe box," while the defendant's mark "'Delicious,' by contrast, is written in silver cursive lettering across the chest of a hot pink tank top." Id. at 1032. And the defendant's product, as it appeared in the marketplace, was sold

29

amid a variety of other products that were readily identified with the defendant, making it "unlikely that a knowledgeable consumer" would assume that the tank top was associated with the plaintiff. Id. Nevertheless, this Court found that "a jury could [still] reasonably conclude that the 'similarity of marks' factor weigh[ed] in favor of [the plaintiff]," because (a) the marks were, after all, the same word [just as here] and [just as here] were not associated with any logo, and (b) under Sleekcraft, "similarities [between marks] are weighed more heavily than differences." Id.

Likewise, in Entrepreneur Media, supra, 279 F.3d 1135, 1144 (9th Cir. 2002), this Court found that the similarity of marks factor weighed in favor of likelihood of confusion, where one publication used the trademarked title "Entrepreneur" and another used the title "Entrepreneur Limited," even though the two titles were not identical and even though the "covers and font styles of the titles of the two publications differ." The Court was persuaded by the fact that "the word 'ENTREPRENEUR' is the most prominent visual feature of both publications' covers" — just as the title "GRINGO" is the most prominent visual feature of both the Book and the Film covers here. See also Playboy Enterprises., supra at 1028 (9th Cir. 2004) (marks that differed in their use of capitalization, in their fonts and in their use of the singular versus the plural still deemed "similar" for purposes of Sleekcraft); Rearden, supra at 1212 ("While [the district court] properly observed that no ordinarily prudent consumer could be confused by the parties' very different

30

logos, it highlighted the apparent similarities between the names themselves," such that "a reasonable juror could [still] conclude that the … 'similarity of the marks' weigh more than just 'somewhat' in favor of finding a likelihood of confusion.").

Again, however, even assuming *arguendo,* as the district court found here, that the "artwork, font and style" of the Film poster as compared to the Book cover could render the marks themselves sufficiently dissimilar to weigh against the likelihood of confusion, each of the foregoing authorities confirms that that is a determination for the finder of fact — not for the judge on a motion to dismiss. Judge Selna cited no authority whatsoever for concluding otherwise.[3]

In any event, while the issue of similarity in the artwork is largely subjective, a reasonable fact-finder could certainly conclude, contrary to the conclusion of the district court on this motion to dismiss, that the poster for the Film is not so dissimilar from the cover of the Book that the Sleekcraft factor of similarity should weigh against the likelihood of confusion. As shown from the depictions in the SAC (ER

---

[3] Notably, in determining that the similarity of the covers (or lack thereof) was relevant to determining the similarity of the marks, the district court evidently assumed that consumers would expect the cover of a book to be similar to the poster for a film of the same title if the film was in fact an adaptation of the book. There is no evidence (or allegation) of that. It may well be that films that are adapted from books of the same title nevertheless often (if not typically) utilize very different artwork from the cover of the book for their posters — which would lead consumers not to have any expectation that a film with the same title as a book would be any less likely to be associated with the book by reason of dissimilar artwork. But that too should be determined though a factual record, not on a motion to dismiss.

36 ¶ 25), the font of the title "GRINGO" on the cover of the Book does not seem so "strikingly different" from the font of the title "GRINGO" on the poster for the Film, as Judge Selna concluded. Significantly too, both the cover of the Book and the poster for the Film prominently display the Amazon imprimatur — the former showing that the Book was an "Amazon Best-Seller" and the latter showing that the Film was an "Amazon Original." Also, while the district court thought it significant that the cover of the Book featured artwork of a man on a "Wanted" notice, as compared to the poster of the Film, which featured "an action shot of the main character [also a man] running from two gun-wielding characters," the theme of each depiction is actually the same — a man "on the run," which is part of the thematic similarity between the Book and the Film that Plaintiffs have alleged. (ER 35 ¶ 22).

Judge Selna points out that the cover of the Book identified the authors, while the poster of the Film "features the faces of three of the film's stars," but, of course, that difference does not lessen the likelihood of confusion about the source of the film, because, even if the film was an adaptation of the book, consumers would still undoubtedly expect to see the stars of the film depicted on the poster (not the authors of the book). But again, whether or not any of these differences between the two covers diminishes the similarity of the marks to the extent that this factor does not weigh in favor of a likelihood of confusion should be determined as a matter of fact by the fact-finder, not by the court on a motion to dismiss.

**<u>Finally:</u>** The district court determined that the marks here were dissimilar, because "Defendants' Film tells a different story than the Book," but that too can hardly be a point that weighs against a likelihood of confusion. To the contrary, the fact that the Film tells a different story from the Book is precisely the harm from a likelihood of confusion. The fact that the Defendants are using Plaintiff's trademarked title in connection with telling a different story from that of the Plaintiffs is the very point of the Plaintiffs bringing a Lanham Act claim in the first place — they are complaining, as the Act contemplates, that the Defendants are using a mark similar to the Plaintiffs' protected mark to mislead consumers into believing that Defendants are selling the same product as the Plaintiffs (or, in this case, telling the same story as the Plaintiffs "on the screen"), in order to induce consumers to purchase the Defendants' product (or film), when actually the Defendants are selling a different product (or telling a different story). It simply makes no sense to find that, in the case of expressive works, the story of the junior user of the mark must be the same as (or similar to) the story of the owner of the mark in order for the marks to be deemed similar enough to satisfy <u>Sleekcraft</u>, when the very purpose of Lanham Act protection is to prevent the use of a similar mark by the junior user to dupe consumers into purchasing a product that they expect to be the same as or derived from the product of the senior user but is actually *different* from or unrelated to the product of the senior user.

The district court also suggests that the two marks should not be considered similar not only because the Defendants' Film is telling a different story from the Plaintiffs' Book, but because consumers can "easily distinguish" the two stories by comparing the synopsis of the Film to the synopsis of the Book. (ER 15). However, whether or not that is so again has nothing to do with whether the marks themselves are similar. The idea that consumers might be able to clear up the initial confusion created by the similar titles by resorting to synopses of the two expressive works may be relevant to the <u>Sleekcraft</u> factor dealing with "type of goods and purchaser care," which is addressed *infra* (at 42-43), but it has no bearing on the factor dealing with the similarities of the marks themselves.

Again, it bears repeating in this context that the protected intellectual property here is in the trademarked title — nothing else. It is not in the story. Requiring that a defendant sell the same story as a plaintiff in order to be liable to the plaintiff is the province of *copyright* law, not *trademark* law. Liability for the defendant selling a *different* story from the plaintiff's, under the guise of a mark leading the consumer to expect the same story as the plaintiff's (or one derived therefrom), is the province of trademark law; yet, oddly, the district court would have that be a disqualifying factor rather than the very justification for the claim. The district court cited to no authority (and Plaintiffs are aware of none) that would support the proposition that, in order for a Lanham Act defendant publishing an expressive work to have liability

for misappropriating the trademarked title of the plaintiff's expressive work, the defendant must tell the same story (or even a similar story) as the plaintiff.

In sum: Whatever differences there may be, the similarities of these marks are obvious — they use the same term ("GRINGO") for the same purpose (the title of their work) to refer to the same thing (their protagonist) with the same meaning (a non-Spanish speaking American out of his element south of the border), for a story with a similar theme (a protagonist on the run after being set up for selling marijuana), with typeface and cover art that furthers the similar theme, and both with Amazon endorsements.  This Court has been clear that, for purposes of assessing whether the similarities of the marks weigh in favor of a likelihood of confusion, "similarities weigh more heavily than differences." Sleekcraft, supra, at 351; see also e.g., Goto.com, supra, at 1391; La Quinta, supra, at 876.  There should be no doubt that the similarities outweigh any differences here, or at least that there are enough similarities that the determination should be left to a fact-finder, not determined by a court on a motion to dismiss, as the district court did here.

**4. Evidence of Actual Confusion**

"In this circuit, actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act." Academy of Motion Picture Arts & Sciences, supra, 944 F.2d at 1456 (9th Cir. 1991). "This factor is weighed heavily only when there is evidence of past confusion," not when there is not. Sleekcraft, supra, at 353;

see also, Goto.com supra, at 1209 ("While evidence that the use of the two marks has already led to confusion is persuasive poof that future confusion is likely, the converse is not true."). And again, Sleekcraft considered this factor only post-discovery and, indeed, post-trial, not on the face of the pleadings, which are not meant to be evidentiary.

Here, the district court concluded that "Given that there is no 'actual evidence of confusion,' this factor is not a meaningful consideration in one direction or another at this stage." (ER 16). Nevertheless, Plaintiffs do allege some evidence of actual confusion. (ER 38-39 ¶¶32-35). Plaintiffs allege, *inter alia,* not only that negative reviews of the Film scared away potential purchasers of the Book who were confused and assumed the Film was an adaptation of the Book but that potential investors in the film rights to the Book prior to the release of the Film lost interest following the Film's release, because they expected consumers would be confused and had observed that consumers in fact were confused into believing the Film was already an adaptation of the Book. (ER 39 ¶ 35). See Entrepreneur Media, Inc., supra, 279 F.3d 1135, 1151 (9th Cir. 2002) ("a reasonable juror would have to find that one of EntrepreneurPR's clients was actually confused, [thus] this factor weighs in favor of summary judgment for [plaintiff]."); Rearden, supra, 683 F.3d at 1214, 1215, n.9 (9th Cir. 2012) ("[N]on-consumer confusion may also be relevant to the 'likelihood of confusion' inquiry. … These non-consumers include … an investor.

… We … recognize that the confusion of … investors and similar groups of non-consumers could be relevant").

## 5. **Marketing Channels**

As the district court observed (ER 16), "convergent marketing channels increase the likelihood of confusion." Sleekcraft, supra, 500 F.2d at 353. The Court determined, however, that the "marketing channels weigh against likelihood of confusion here." (ER 17).

In doing so, the Court again treated this motion to dismiss as if it were a motion for summary judgment, based on some evidentiary record. The Court observed that "the parties dispute whether the Book and Film are marketed through the same channels." Id. The Court observed that "to make their case," Defendants pointed to various ways in which the Film was "widely advertised" — on "movie posters, billboards, streaming and rental service web pages and televisions and internet trailers and commercials" — that the Book was not advertised (which is not so, and, in any event, books are not typically as widely advertised as films). Id. But, of course, the pleading stage is not the time for the Court to resolve the parties' "dispute" as to how the Book and Film were actually marketed or for the Defendants to "make their case" as to how the Film was actually advertised. It is the time to simply determine whether Plaintiffs have adequately alleged that the Book and Film were marketed through "convergent" channels, and the SAC clearly alleges that.

37

To assess convergence of marketing channels, "courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." Pom Wonderful LLD v. Hubbard, 775 F.3d 1118, 1130 (9th Cir. 2014) (cited with approval by Judge Selna at ER 16). Plaintiffs allege that the parties' customer bases did overlap — that the customer base for both the Book and the Film were "consumers of media entertainment" and, in particular, "the Amazon media entertainment consumer class." (ER 37-38 ¶¶ 27, 32). Plaintiffs also allege very clearly that both parties advertised and/or marketed their products primarily in the same manner — with the Amazon imprimatur through Amazon channels of distribution. Thus the SAC alleges that (i) Defendants marketed their Film as an "Amazon Original" movie and sold and rented their Film via the "Amazon Prime Video" streaming service (ER 36-38, 40-41 ¶¶ 26, 30, 41-42), just as Plaintiffs marketed their Book through Amazon as an "Amazon #1 Bestseller" (ER 35-37 ¶¶ 18, 26, 28, 37); (ii) Plaintiffs advertised their Book — prominently and right on the cover of the Book, in two places (ER 36-37 ¶ 26) — as an "Amazon #1 Bestseller," while the Defendants advertised their Film, with the same title, as an "Amazon Original," which was likewise displayed prominently on the face of their poster (id.); and (iii) in all their promotional materials, "Defendants … paired the [Film's] "GRINGO" title with a similar Amazon endorsement as appears beside the title of

the Book" (ER 36-38 ¶¶ 24, 28, 30), just as the Book was achieving the height of its popularity as an Amazon Bestseller. (ER 36-37 ¶ 26).

This is an obvious convergence in the marketing channels used by the parties for their respective expressive works. As the district court observed (ER 16), the Defendants conceded "the common distribution of the works through Amazon."

Nevertheless, the district court somehow concluded, even at the pleading stage, that "the convergence of marketing channels here is a most a slim one" (id.) and that the "marketing channels" [therefore] weigh against likelihood of confusion here." (ER 17). In purported support of this conclusion, the Court stated: "The extent of the overlap in customer bases is confined only to the mass of humanity that shops on Amazon, which is such a broad group that it provides no useful metric to evaluate likelihood of confusion the way a comparison of specified, targeted marketing campaigns otherwise would." Id. This "finding" is not only premature, in the absence of any factual record, but is at odds with both the SAC and the relevant case law.

The SAC alleges that both parties engaged in very targeted marketing campaigns through related Amazon platforms. Plaintiffs targeted Amazon book buyers, became an #1 Amazon Bestseller, and then, with that status and favorable reviews from hundreds of Amazon buyers, were able to obtain widespread reviews across leading publications and market their Book to a broader readership. (ER 39-43 ¶¶ 19, 37). Defendants didn't just sell their Film on Amazon — they made their

Film with Amazon, prominently marketed it as an Amazon Original and streamed their Film on Amazon Prime.  (ER 37-38, 41 ¶¶ 28, 30-31, 42).

This Court has found such marketing campaigns using the same or related online platforms to satisfy this <u>Sleekcraft</u> factor.  <u>See e.g.</u>, <u>La Quinta</u>, <u>supra</u>, at 877 (the "marketing channels" factor weighed in favor of likelihood of confusion where both parties used the same mass user internet travel sites, "such as Expedia.com and Orbitz.com to reach consumers"; the use of common internet marketing sites "is particularly likely to cause confusion, because it allows for the competing marks to be encountered at the same time, on the same screen."); <u>Perfumebay.com, Inc. v. eBay, Inc.</u>, 506 F.3d 1165, 1174 (9th Cir. 2007) ("Perfumebay and eBay both utilize the internet as a marketing and advertising facility, a factor that courts have consistently recognized as exacerbating the likelihood of confusion.").

Plaintiffs should have the opportunity to develop a record regarding the convergence of these marketing channels and the impact on consumers — through fact witnesses and experts — upon which the fact-finder might then reach an informed conclusion.  This determination too should be left to a fact-finder, not determined by a court on a motion to dismiss, as the district court did here.

## 6.  <u>Type of Goods and Purchaser Care</u>

The issue here is whether the parties' products are the sort as to which an "average buyer" would normally exercise the requisite degree of care in purchasing

decisions to minimize the likelihood of confusion as to the relationship between the products, notwithstanding any other <u>Sleekcraft</u> factors that might create such confusion. <u>Sleekcraft</u>, <u>supra</u> at 353. The district court concluded that consumers would exercise such a degree of care that this factor weighed against a likelihood of confusion. (ER 18).

In doing so, Judge Selna referred to and evidently adopted Defendants' argument that prospective purchasers would not be confused and would readily understand that the Book and the Film were unrelated by (i) "observing the differences in the covers" and (ii) "reading the synopses on Amazon." (ER 17). As to the former, Plaintiffs have shown herein (*supra,* at 31-32) that the average consumer would be unlikely to readily distinguish between the Book and the Film merely be looking at the covers, because, *inter alia,* (i) both covers prominently bear the identical title; (ii) the fonts of the title are not so dissimilar and are both in all capital typeface; (iii) the artwork of each cover suggests a common theme of a man on the run; and (iv) both covers prominently display the Amazon imprimatur — one identifying the Book as an Amazon #1 Bestseller and the other identifying the Film as an Amazon Original Movie. Significantly, what the Film does not have on its "cover" is any disclaimer that it is derived from the Book or associated with its authors — which is exactly what should be on the cover of a film with the same title

as a popular book in order to allow consumers to be in a better position to distinguish the two.

As to the notion that consumers would readily determine that the Film is unrelated to the Book by reading the Amazon synopsis of each, this again calls for speculation about the facts without any basis for doing so. How could the district court determine, without any evidence at all, that most consumers would be inclined to read the Amazon synopses of the Book and the Film before purchasing either? If we *are* to speculate, Plaintiffs submit that most consumers would be unlikely to do so, because neither item is expensive enough or unusual enough for the average buyer to bother to investigate the content to determine whether they are actually related before inferring that they are by reason of their having the same title. As this Court has observed, "when goods are expensive, it is assumed that buyers will exercise greater care in their purchases," E&J Gallo Winery v. Gallo Cattle Co., supra, at 1340 (see also Goto.com, supra, at 1209); however, "when dealing with inexpensive goods, customers are likely to exercise less care, thus making confusion more likely." Brookfield Comm., supra, 174 F.3d at 1060; see also Playboy Enterprises, supra, 354 F.3d at 1028 ("Consumer care for inexpensive products is expected to be quite low. Low consumer care, in turn, increases the likelihood of confusion."). Here, both the Book and the Film are modest purchases — obviously

nothing like the cost of a boat that prompted this Court in <u>Sleekcraft</u> to assume the consumer would exercise greater care in investigating his purchase.

Nevertheless, Judge Selna determined that: "The notion that customers would navigate to the respective pages for the Book and Film and still be confused as to their relationship is undermined by the ease with which they can investigate the difference." (ER 18). Plaintiffs were not and are not suggesting that consumers who bother to "navigate" through the two synopses would necessarily still be confused as to an association between the two; instead, it has been Plaintiffs' position that the average consumer is not likely to undertake the navigation in the first place and should not be expected or obligated to do that. <u>See e.g.</u>, <u>Fleischmann Distilling Corp.</u>, <u>supra</u>, at 156 ("The law is not made for the protection of experts, but for the public — that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions. .... The law protects not only the intelligent, the experienced and the astute. It safeguards from deception also the ignorance, the inexperienced and the gullible.").

In any event, this Court has cautioned that, in determining the likelihood of confusion based upon this factor, the district courts should not make assumptions that the ability or inclination of would-be purchasers to engage in clarifying research will overcome a likelihood of confusion that is damaging to the trademark owner.

The initial confusion is damaging enough. See Playboy Enterprises, supra, 354 F.3d at 1025 (Even though a consumer's confusion may be "dispelled before an actual sale occurs, initial interest confusion [i.e, customer confusion that creates initial interest in the product] impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement." Even if the consumer realizes almost "immediately" after his initial confusion that the products are actually unrelated, "the damage has been done.").

The fact remains that there is no record here of how much effort is required to access any synopses, how likely it is that consumers would do so, or what the synopses in fact say such that the district court could properly conclude, on a motion to dismiss, that the possibility of such investigation weighs against a likelihood of confusion. That should be determined, if at all, only after such facts are developed, not on the face of the pleading. See Fortune Dynamic, supra, at 1038-39 (Because it difficult to know how "discerning" consumers might be as to any particular product that is not particularly expensive, the determination of this Sleekcraft factor is a question of fact best left for the jury.).

### 7. **The Defendants' Intent in Selecting the Mark**

As the district court stated (ER 18): "This factor favors the plaintiff 'where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark.' JL Beverage, 828 F.3d at 1111 (quoting Brookfield

44

[Comm., supra,] 174 F.3d 1036, 1059 (9th Cir. 1999)." See also e.g., Anstalt, supra, at 1260 (defendant's knowledge of plaintiff's mark before adopting plaintiff's mark indicates an intent that weighs in favor of likelihood of confusion).

Here, Plaintiffs clearly allege in the SAC that Defendants adopted "GRINGO" as the title of their Film knowing that Plaintiffs had already used that mark as the title of their Book. In fact, it is alleged that Plaintiffs originally had a different title for their Film but *retitled* the Film "GRINGO" after learning about Plaintiffs' Book:

> 23. When production of the Movie began, in or about 2014, its "working" title was "American Express." However, after publication of the Book in November 2016, and before release of the Movie in March 2018, Defendants, without Plaintiffs' authorization, determined to change the title of the Movie to the same "GRINGO" title as the Book.

> 26. Upon information and belief, prior to changing the title of the Movie, each of the Defendants had become aware of the Book (either on their own initiative or upon information shared by the other Defendants), its thematic commonalities with the Movie and its commercial success as an Amazon Bestseller in the very same marketplace into which Defendants intended to primarily release the Movie into interstate commerce as an "Amazon Original" movie via the "Amazon Prime Video" streaming service.

(ER 36-37).

A defendant's intentional adoption of the plaintiff's mark weighs in favor of a likelihood of confusion, because one can infer from the defendant's *intentional* adoption of the mark, and especially from his intent to use it to cause confusion, that

45

he will succeed in that objective. As this Court held in <u>Entrepreneur Media, Inc.,</u>

<u>supra</u> (at 1148):

> "While an intent to deceive consumers is not required for a finding of trademark infringement, ***intent to deceive is strong evidence of a likelihood of confusion.*** … The point is not that an intent to confuse is relevant as some measure of culpability. Rather, the alleged infringer's judgment as to what is likely to be confusing is relevant, because it may well be accurate. … [A] determination on the merits that [defendant] intended to deceive consumers would provide strong evidence of a likelihood of confusion and, as a result, could overcome weaker showings by [plaintiff] in other factors."). (Emphasis added).

<u>Accord</u> <u>Restatement of Torts,</u> §729, Comment on Clause (b) (1938) ("[I]f he adopts

his designation with the intent of deriving benefit from the reputation of the trade

mark or trade name, his intent may be sufficient to justify the inference that there is

confusing similarity. Since he was and is intimately concerned with the probable

reaction in the market, his judgment manifested prior to the controversy is highly

persuasive.").

 Here, Plaintiffs have not simply asked the Court to *infer* Defendants' intent to

deceive consumers from the allegations that they knowingly adopted Plaintiffs'

trademarked title as their own, Plaintiffs expressly allege, in detail, that Defendants

had that wrongful intent so as to capitalize on the goodwill and popularity of

Plaintiffs' Book:

> 27. Upon information and belief, Defendants changed the title of the Movie to "GRINGO" with the actual and purposeful intention to deceive, mislead and cause confusion among consumers, and

especially among the Amazon buyer class and consumers of media entertainment, as to the content and origin of the Movie and its association with the Book and/or sponsorship or endorsement by Davis, knowing that consumers would rely on the title of the Movie and the Movie's title in combination with its thematic commonalities to the Book to incorrectly assume that there was an association between the Movie and the Book and/or Davis.

28. Upon information and belief, Defendants intended to deceive consumers into associating the Movie with the Book in order to lure readers of the Book into the audience for the Movie by exploiting the goodwill, public recognition and commercial success enjoyed by the Book and, especially, to exploit its imprimatur as an Amazon Bestseller, in anticipation of releasing the Movie into interstate commerce as an "Amazon Original" movie via the "Amazon Prime Video" streaming service.

…

39. Defendants have subsequently used the "GRINGO" trademark as the title of their Movie, without Plaintiffs' authorization, and, upon information and belief, with the specific intent to deceive, mislead and cause confusion among consumers as to the content and origin of the Movie and its relationship to the Book and its author and subject in order to exploit for their benefit the goodwill, popularity and commercial success of the Book, particularly among Amazon media consumers.

40. Defendants' purposeful and unauthorized use of Plaintiffs' trademark in the title "GRINGO" as the title of their Movie has in fact caused a likelihood of confusion and actual confusion among a substantial number of consumers and continues to deceive, mislead and confuse consumers as to the source of the Movie and its relationship to the Book.

41. Defendants have purposefully and intentionally caused this likelihood of confusion among consumers and actual confusion among consumers and have purposefully and intentionally deceived and misled consumers as to the source of the Movie and its relationship to the Book by purposefully and intentionally using

Plaintiffs' trademark in the very same way as Plaintiffs, i.e., (a) as the title of an expressive work in the entertainment sector, (b) as the title of a work marketed to, and in particular concentrated on, the Amazon media consumers, and (c) as the title of a work that refers to a protagonist who is a non-Hispanic American on the run and out of his element south of the border after being set up by his friends for distributing marijuana.

42. Defendants have further purposefully and intentionally caused a likelihood of confusion among consumers and actual confusion among consumers and have purposefully and intentionally deceived and misled consumers as to the source of the Movie and its relationship to the Book by, *inter alia*, purposefully and intentionally (a) releasing their Movie with the same title as the Book and a commonality of thematic elements shortly after publication of the Book, amid its recognition as an Amazon #1 Bestseller, (b) using the title "GRINGO" without any text or adornment, in the same all-capital letters and in a similar font as Plaintiffs used for the Book's title, (c) releasing and marketing the Movie as an "Amazon Original Movie" through Amazon's streaming service, while the Book was an Amazon #1 Bestseller and prominently marked as such, and (d) promoting and marketing the Movie primarily to the same and related media entertainment markets and concentering it on the Amazon class of media consumers while the Book was an Amazon #1 Bestseller.

(ER 37, 40-41).

The district court concluded that the foregoing was "sufficient to state intent" and that, "at this stage," it "weighs in favor of the likelihood of confusion." (ER 19). Evidently, however, the district court did not weigh Defendants' sufficiently alleged intent heavily enough in favor of a likelihood of confusion to prevent the Court from still finding that the "overall balance" of <u>Sleekcraft</u> factors required it to dismiss this action on the face of the pleading. Judge Selna stated in this regard (ER 18 n.3):

48

"While intent is a factor that can weigh, even heavily, in favor of the likelihood of confusion, to hold this one factor dispositive would be to eviscerate the [Sleekcraft] test — especially at the motion-to-dismiss stage."

However, whether not Defendants' wrongful intent is dispositive of a likelihood of confusion, this Court determined in Sleekcraft (supra, at 354) that it is still "presumptive" of a likelihood of confusion: "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts **presume** that the defendant can accomplish his purpose: that is, that the public will be deceived.") (emphasis added); see also, e.g., La Quinta, supra, at 877 (same).

In Fleischmann Distilling Corp., supra, 314 F.2d at 157-58 (9th Cir.), this Court stated further in this regard:

> It is well settled that plaintiffs were not obliged in order to make a case against the defendants to prove a wrongful intent. (citation omitted). But when the evidence does show or require the inference that another's name was adopted deliberately, with a view to obtain some advantage from the good will, good name and good trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopter had indicated that he expects confusion and resultant profit. (citations omitted). … **If such an intent is shown, it raises a presumption that deception and confusion resulted.** (Emphasis added).

Accord, HMH Pub. Co., Inc. v. Brincat, 504 F.2d 713, 720 (9th Cir. 1974). The district court did not recognize this presumption.

This presumption may (presumably) be overcome at a later stage of the litigation by either (i) evidence that there actually was no such intent, or (ii)

overwhelming evidence that the other <u>Sleekcraft</u> factors still weigh more heavily against a likelihood of confusion — but neither has yet occurred here. What has occurred is that the district court has determined, based on plausible allegations of intent, that those allegations are "sufficient to state intent" — but then failed to accord the appropriate weight to that intent in resolving the likelihood of confusion. These allegations of intent, which the district court credited for purposes of this motion to dismiss, must therefore be assumed to be true, in which case, a likelihood of confusion must therefore be presumed, at least at this stage, unless and until the evidence shows otherwise. Surely, that presumption is not overcome (and has not been overcome) on the face of the pleading, given that the district court has also determined (and the SAC amply demonstrates) that various other of the <u>Sleekcraft</u> factors also weigh in favor of a likelihood of confusion. Plaintiffs find no authority (and the district court cited none) for dismissal of a Lanham Act claim at the pleading stage, based on failure to adequately allege a likelihood of confusion, where the Court has determined that the pleading has adequately alleged the defendants' intent to deceive consumers.[4]

---

[4] Contrary to Judge Selna's view that treating a defendant's intent to deceive as dispositive of a likelihood of confusion would "eviscerate" the Sleekcraft test "especially at the motion to dismiss stage," it is actually *especially* at the motion-to-dismiss stage that treating the defendant's alleged intent *should be dispositive*, because the only "disposition" at this stage is that both parties have the opportunity to then take discovery and present the facts regarding the Defendants' intent and the other <u>Sleekcraft</u> factors necessary to actually resolve the likelihood of confusion.

### 8. **Likelihood of Expansion**

As the district court observed (ER 19), this factor requires the courts to "examine the likelihood that 'either party may expand [its] business to compete with the other.'" <u>Sleekcraft</u>, 599 F.2d at 353. This factor takes into account "the likelihood of expansion of the product lines" of the parties. <u>Reardon</u>, <u>supra</u>, at 1218. "A strong likelihood that either party may expand his business to compete with the other favors a finding of infringement." <u>Official Airline Guides</u>, <u>supra</u>, at 1394; <u>See also</u> <u>La Quinta</u>, <u>supra</u>, at 877.

The district court found this factor "relatively unimportant here." (ER 19). However, the SAC specifically alleges (ER 39 ¶ 35) that Plaintiffs had plans "to sell the film rights to their Book" and thereby expand the product lines for their story but that potential investors who had "actively showed interest in the film rights to the Book prior to the release of the [Film] indicated to Plaintiffs that they lost interest following the [Film's] release, because they believed, expected consumers would believe and saw that consumers were believing that the [Film] was already an adaptation of the Book." <u>See</u> <u>Fleischmann,</u> <u>supra,</u> at n.6 ("The theory on which the wrong [i.e., trademark infringement] has been extended to include the use of the mark on goods never made or sold by the owner [of the mark] is that, though the infringer's use cannot at the moment take away his customers, it may indirectly do

so by tarnishing his reputation, ***or it may prevent him from extending his trade to the goods on which the infringer is using the mark.***"). (Emphasis added).

## CONCLUSION

This case is not that very unusual case where dismissal of a Lanham Act complaint is warranted, on the face of the pleading, for failure to adequately allege a likelihood of confusion. Here the district court found, correctly, that several of the most critical <u>Sleekcraft</u> factors are satisfied by the SAC — including, in particular, the commercial strength of Plaintiffs' Mark, the relatedness of the parties' products bearing the Mark (i.e., Plaintiffs' Book and Defendants' Film), and, most importantly, the Defendants' intent in adopting "GRINGO" as the title of their Film, knowing that it was already the title of Plaintiffs' Book. These findings alone — i.e., those that were in fact made by the district court — are themselves clearly enough to satisfy <u>Sleekcraft</u>, at least at the pleading stage. This Court has been clear that a Lanham Act plaintiff "need not satisfy every [Sleekcraft] factor, provided that strong showings are made with respect to some of them. … [A] likelihood of confusion may rest on a subset of factors…" <u>Jada Toys, Inc. v. Mattel, Inc</u>., 518 F.3ed 628,633 (9th Cir. 2008); <u>accord</u> <u>e.g.</u>, <u>Surfvivor</u>, <u>supra</u>, 406 F.3d at 631-34.

If anything more were possibly needed to survive a motion to dismiss, Plaintiffs have demonstrated herein that the SAC also satisfies several other <u>Sleekcraft</u> factors that the district court, incorrectly, found weighed against a

likelihood of confusion. These include the similarity of the marks, the conceptual strength of Plaintiffs' Mark, the proximity of the parties' products, actual evidence of confusion, the convergence of the marketing channels used by the parties for the products bearing the marks, and the degree of purchaser care associated with the type of products bearing the marks. When one considers, in this context, that the title of Defendants' Film is alleged to be — and by all appearances undeniably is — not only similar to but *identical* to the trademarked title of Plaintiffs' Book, it is evident that the Sleekcraft factors, at least as alleged, weigh ***heavily in favor of a likelihood of confusion.*** Any determination to the contrary could be made only upon a factual record, not upon this pleading. This Court has held: "Where the subjective impressions of a particular judge are weighed at the expense of other relevant evidence, the value of the multi-factor approach sanctioned by this Court is undermined." Jada Toys, Inc., supra, 518 F.3d at 633 (9th Cir. 2008). Likewise, subjective impressions of the judge should not be weighted at the pleading stage at the expense of contradicting the plaintiff's well pled and very specific allegations.

The district court has shown an unwarranted resistance here to allowing this action to proceed to discovery. The district court has three times dismissed this pleading as inadequate, and this should now end. Plaintiffs have plausibly alleged a likelihood of confusion here and should be allowed, finally, to prove the Defendants' unlawful infringement.

For these reasons, Plaintiffs respectfully submit that the Order of the district court dismissing the SAC should be reversed, with direction to the district court that the pleading be sustained.

Dated:  March 27, 2024

Respectfully submitted,

*/s/ Spencer Dreier*
SPENCER DREIER
**SD VENTURE LAW PLLC**
Rockefeller Center
620 Fifth Avenue, Suite 200
New York, New York 10020
Phone: 917.841.9571
Email: sdreier@sdlawpllc.com

*Counsel for Plaintiffs-Appellants*
*Daniel E. Davis, Peter Conti and*
*Gringo Holdings LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(C) and 9th Circuit Rule 32-1, I certify that the attached brief is proportionally spaced, has a typeface of 14 point, and contains 12910 words, including footnotes as calculated by the Microsoft Word word-processing software used to generate this brief.

Dated: March 27, 2024

Respectfully submitted,

*/s/ Spencer Dreier*
SPENCER DREIER
**SD VENTURE LAW PLLC**
Rockefeller Center
620 Fifth Avenue, Suite 200
New York, New York 10020
Phone: 917.841.9571
Email: sdreier@sdlawpllc.com

*Counsel for Plaintiffs-Appellants*
*Daniel E. Davis, Peter Conti and*
*Gringo Holdings LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on March 27, 2024, I caused this Initial Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Moez M. Kaba
> Hueston Hennigan LLP
> 523 West 6th Street
> Suite 400
> Los Angeles, CA 90014

Dated: March 27, 2024

Respectfully submitted,

*/s/ Spencer Dreier*
SPENCER DREIER
**SD VENTURE LAW PLLC**
Rockefeller Center
620 Fifth Avenue, Suite 200
New York, New York 10020
Phone: 917.841.9571
Email: sdreier@sdlawpllc.com

*Counsel for Plaintiffs-Appellants*
*Daniel E. Davis, Peter Conti and*
*Gringo Holdings LLC*